UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DANIEL REMIGIO-SALCEDO PENA,  )
                              )   NO.   CR-05-0205-WFN-2
         Movant,              )         CV-08-0199-WFN
                              )
     -vs-                     )
                              )   ORDER
UNITED STATES OF AMERICA,     )
                              )
         Respondent.          )

Before the Court is Mr. Daniel Remigio Salcedo Pena's pro se Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, filed June 23, 2008 (Ct. Rec. 264). The Governments response was filed October 20, 2008 (Ct. Rec. 274); Mr. Pena's Reply was filed December 1, 2008 (Ct. Rec. 276 & 277); and the Government's briefing on the new issue raised in Movant's reply was filed December 23, 2008 (Ct. Rec. 278).

The Court has reviewed the file, the briefing on the § 2255 Motion and is fully informed. For the reasons stated below the Motion is denied.

## I. BACKGROUND

Mr. Pena was initially indicted with three co-defendants on drug conspiracy charges on November 16, 2005 (Ct. Rec. 33). A superceding Indictment was filed February 7, 2006, charging Mr. Pena with conspiracy to distribute 500 grams or more of a mixture of methamphetamine in violation of 21 U.S.C. § 846 (Count 1); distribution of 500 grams or more of a mixture of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count 2); and possession with intent to distribute 50 grams or more of pure methamphetamine in violation of 21 U.S.C. § 841(a)(1) (Count 3) (Ct. Rec. 82). Mr. Pena was represented throughout the proceedings by appointed counsel Frank Cikutovich (Ct. Rec. 22).

ORDER - 1

Mr. Pena's jury trial commenced on April 24, 2006 and concluded on April 26, 2006, when the jury returned guilty verdicts on all three counts (Ct. Rec. 151). The Court held sentencing evidentiary hearings on September 26, 2006, October 11, 2006 and November 9, 2006 to address the contested issues of whether Mr. Pena qualified for acceptance of responsibility and for the safety valve. On these issues Mr. Pena's counsel submitted among other things the affidavits of Mr. Pena (Ct. Rec. 207) and co-Defendant Antonio Ricardez Garcia (Ct. Rec. 208). Mr. Pena's affidavit stated that he wished to attempt to qualify for the safety valve in open court because he did not trust the government. The Court determined that Mr. Pena did not qualify for either acceptance of responsibility or for the safety valve. Mr. Pena was sentenced to the mandatory minimum sentence of 120 months on each count to run concurrently, 5 years of supervised release, and a special assessment of $300. Judgment filed 11/9/06, Ct. Rec. 210.

Mr. Pena appealed (Ct. Rec. 215) and the Ninth Circuit affirmed with a mandate filed August 6, 2007 (Ct. Rec. 253); *United States v. Pena,* 234 Fed. Appx, 766, 2007 WL 2031619 (9th Cir. 2007) . The two issues on appeal were whether the Court erred in denying Mr. Pena's Rule 29 motion and erred in finding that Mr. Pena did not qualify for the safety valve. 234 Fed. Appx. at 766.

Mr. Pena filed his collateral attack on June 23, 2008 (Ct. Rec. 264). The two grounds identified in the § 2255 Motion were that: 1) the Court imposed a mandatory minimum sentence of 120 months after incorrectly assuming that Mr. Pena was ineligible for the safety valve; and 2) that Mr. Pena received ineffective assistance of counsel at sentencing because "defense counsel did not effectively explain and/or argue ... that the Defendant was legally eligible for the Safety Valve." Motion filed 6/23/08, Ct. Rec. 264, p. 2.

## II. DISCUSSION

To be eligible for relief pursuant to 28 U.S.C. § 2255 Movant must establish two thresh-hold requirements: (1) that he is in custody under a sentence of this federal court; and

ORDER - 2

1 (2) his request for relief is timely. 28 U.S.C. § 2255. The first requirement is satisfied as the
2 record shows that Mr. Pena is in custody under a sentence of this Court. The second
3 requirement is also satisfied as Mr. Pena's Motion was timely filed.

4       To obtain relief pursuant to 28 U.S.C. § 2255 Movant must show that: (1) his sentence
5 was imposed in violation of the Constitution or federal law; 2) the court lacked jurisdiction
6 to impose the sentence; 3) the sentence was in excess of the maximum authorized by law;
7 or 4) the conviction or sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255.

8       At this stage of the proceedings the Court must determine if an evidentiary hearing is
9 required. Rule 8(a), RULES--SECTION 2255 PROCEEDINGS (West 2008). The Court is to
10 review "the answer, [and] any transcripts and records of prior proceedings" in making its
11 determination. *Id.* The Court will address the grounds raised by the § 2255 Motion in turn.

12       **Ground 1: Court's Failure to Find Safety Valve Applicable to Defendant.**

13       Mr. Pena asserts that he should have received a sentence below the statutory
14 mandatory minimum of 120 months because he satisfied all elements, including paragraph
15 5 of 18 U.S.C. § 3553(f). Paragraph 5 provides that:

16       (5) not later than the time of the sentencing hearing, the defendant has truthfully
17       provided to the Government all information and evidence the defendant has
      concerning the offense or offenses that were part of the same course of conduct
      or of a common scheme or plan, but the fact that the defendant has no relevant
18       or useful other information to provide or that the Government is already aware
      of the information shall not preclude a determination by the court that the
19       defendant has complied with this requirement.

20 18 U.S.C. § 3553(f). Mr. Pena argues that he provided all the information that he had about
21 the offense and implies that because he didn't have much information he was denied the
22 safety valve at sentencing.

23       Mr. Pena's argument on Ground 1 must fail. As the Government points out, a § 2255
24 Motion "may not be invoked to relitigate questions which were, or should have been, raised
25 on direct appeal... . *Battaglia v. United States,* 428 F.2d 957, 960 (9th Cir. 1970). Here, Mr.
26 Pena raised this precise issue on appeal and the Ninth Circuit denied him relief. *United*

ORDER - 3

*States v. Pena,* 234 Fed. Appx, 766, 768, 2007 WL 2031619 (9th Cir. 2007). The Circuit observed:

> Lastly, Pena argues that the district court erred in finding Pena ineligible for safety valve relief because he did not meet the requirements of 18 U.S.C. § 3553(f)(5). We review the district court's interpretation of the Sentencing Guidelines de novo and its factual determination that a defendant is ineligible for safety valve relief for clear error. *United States v. Mejia-Pimental*, 477 F.3d 1100, 1103 (9th Cir. 2007). Pena's proffer was substantially inconsistent with the testimony adduced at trial and with proffers made by law enforcement agents who investigated the crime. Therefore, the district court did not clearly err in finding Pena ineligible for safety valve relief.

*Pena,* 234 Fed. Appx. at 768.

Even if the Court were in a position to review the safety valve issue it is clear there was no error. Mr. Pena did not qualify for the safety valve because his verbal proffer at the sentencing hearing was essentially that, while he was present at the location where the drug transaction occurred, he knew nothing about it but was only present to drive an intoxicated Mr. Garcia back to Pasco. The proffer did not appear truthful or complete to the Court. His stated lack of knowledge and involvement was inconsistent with trial testimony from the confidential informant that Mr. Pena had previously made drug deliveries. It was also inconsistent with the information provided by the agents who were called at the sentencing hearing. The agents established *inter alia* 1) the likelihood that Mr. Pena had made prior drug deliveries for co-Defendant Garcia and was a "runner" for him; 2) that the explanation that Mr. Pena was only to drive Mr. Garcia due to Mr. Garcia's intoxication was likely false; 3) that Mr. Pena had a closer connection with Mr. Garcia than he admitted to, with them both using the same address on their driver's licenses; 4) that the phone Mr. Pena used to apply for utilities and on his driver's license (and found on a co-defendant at the time of arrest) had connectivity with the confidential informant's phone at least 12 times; and 5) one of two phones in Mr. Pena's possession at the time of his arrest was likely a phone purchased by a drug group for use in drug dealing. Mr. Pena's first ground for his § 2255 Motion must be dismissed.

ORDER - 4

**Ground 2: Allegation of Ineffective Assistance of Counsel.**

Mr. Pena's second ground for relief is that he received ineffective assistance of counsel because his attorney failed to argue for the application of the safety valve at sentencing. Mr, Pena states that defense counsel "neglected to present any argument to the court." § 2255 Motion, Ct. Rec. 264, p.13. He also asserts that he was prejudiced by counsel's omission. He argues that but for the omission the Court would have found that he qualified for the safety valve, because the Court was allegedly struggling to find a reason to award it to him. *Id.* p. 14.

The Sixth Amendment provides that an accused in a criminal prosecution has a right to the assistance of counsel. U.S. CONST. amend. VI. In considering a claim of ineffective assistance of counsel, the Court must consider whether counsel's representation fell below an objective standard of reasonableness and whether the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *Strickland* provides:

> [t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Strickland*, 466 U.S. at 686. "[B]oth the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact." *Id.* at 698.

The first prong of the *Strickland* test requires that Movant show "that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The Court's scrutiny of counsel's performance must be highly deferential and must attempt to evaluate the conduct from counsel's perspective at the time. *Id.* at 689.

> Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

ORDER - 5

*Id.* quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955); *see, also, United States v. Bosch*, 914 F.2d 1239, 1244 (9th Cir. 1990).

The second prong of the *Strickland* test provides "the defendant must show that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. A defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The standard requires a showing that there is a reasonable probability that, but for the counsel's errors, the results of the proceeding would have been different. *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In this case Mr. Pena cannot satisfy either prong of the analysis. Despite Mr. Pena's assertion to the contrary, his attorney was not ineffective, but did everything he possibly could to assist Mr. Pena to satisfy paragraph five of the safety valve. Mr. Pena cites *United States v. Boothroyd,* 403 F. Supp. 2d 1011 (D. Or. 2005) for support. In that case a defense attorney was found to be ineffective because he failed to investigate and argue for application of the safety valve assuming that the defendant's possession of a firearm precluded eligibility for the safety valve. *Id.* at 1016. The facts in *Boothroyd* are completely at odds with what occurred here. In this case defense counsel asked for several continuances of sentencing specifically to pursue the safety valve issue (Ct. Recs. 176 and 198); he discussed the requirements of the safety valve with Mr. Pena on numerous occasions (Sentencing Transcript, 9/26/06, Ct. Rec. 242, pp. 3-4); defense counsel advised Mr. Pena to make an honest statement keeping in mind that other co-defendants had pled guilty and made statements  (Sentencing Transcript, 9/26/06, Ct. Rec. 244, p. 4); defense counsel cross-examined the government agents at the sentencing hearing and attempted to undermine co-defendant Zazueta's statements  (Sentencing Transcript, 10/11/06, Ct. Rec. 245, p. 15-19, 51-56, 72-74); and finally defense counsel argued for application of the safety valve at the final sentencing hearing on November 9, 2006 (Sentencing Transcript, 11/9/06, Ct. Rec. 246,

ORDER - 6

p. 6). In his final argument defense counsel also presented Mr. Pena's affidavit (Ct. Rec. 207) and the affidavit of co-defendant Garcia (Ct. Rec 208) in which Mr. Garcia states that Mr. Pena was not involved in the drug transaction. As the Government correctly notes, the reason Mr. Pena did not obtain the safety valve was because, despite defense counsel's argument to the contrary, the Court did not find Mr. Pena's statement to be truthful and complete. The Court concludes that defense counsel's performance was not deficient and there was no prejudice to Mr. Pena. To be accurate also, the Court was not struggling to find a reason to award the safety valve to Mr. Pena, but the Court, over the objection of the Government, desired to give Mr. Pena every opportunity to satisfy paragraph five of the safety valve, even if that occurred at the sentencing hearing, rather than prior to the hearing.

**New Trial Based on Newly Discovered Evidence.**

Although not listed as a ground in the § 2255 Motion Mr. Pena in a single sentence in his conclusion to the Motion states that the Court should grant him a new trial due to newly discovered evidence. The new evidence is an affidavit of co-Defendant Garcia that was attached to the Motion. The affidavit states that it should be attached to a prior affidavit of Mr. Garcia that was executed on October 26, 2006. The prior affidavit was filed on November 8, 2006 (Ct. Rec. 208) as a part of the sentencing hearing. The first affidavit was a single handwritten page and made two assertions: 1) that Mr. Pena went to Spokane to drive Mr. Garcia home because he was intoxicated; and 2) that Mr. Pena was never involved in the delivery of drugs for Mr. Garcia, despite Mr. Colvin's testimony to the contrary.[1] The later affidavit is a typed three page document. The lengthier affidavit explains how the two men met, reasserts that Mr. Pena came to Spokane to drive Mr. Garcia home because he was

---

[1] It should be noted that the affidavit says it is both signed by Mr. Pena and notarized by Sara Hayden on October 26, 2007. The year is incorrect and should have been 2006, as the affidavit was filed on November 8, 2006 (Ct. Rec. 208).

ORDER - 7

intoxicated, asserts that Mr. Pena was not involved in the drug conspiracy, and that Mr. Garcia advised Mr. Pena's attorney that he would testify in Mr. Pena's defense but he was never called.

A § 2255 Motion is treated as a motion for a new trial when the movant asserts newly discovered evidence. *United States v. Jackson,* 209 F.3d 1103, 1106 (9th Cir. 2000). A movant is entitled to a new trial if (1) the evidence was newly discovered; (2) movant exercised due diligence in uncovering the new evidence; (3) the new evidence is not merely cumulative or impeaching; (4) the new evidence is material; and (5) the new evidence is such that a new trial would probably produce an acquittal. *Id.* The matter may be decided based on the affidavits without an evidentiary hearing. *United States v. Nace,* 561 F.2d 762, 772 (9th Cir. 1977).

First and most importantly, the evidence submitted cannot be characterized as newly discovered. The affidavit itself admits that Mr. Garcia spoke with defense counsel before Mr. Pena's trial and offered to provide the testimony that Mr. Pena had nothing to do with the drug conspiracy. Mr. Pena knew of this evidence because at sentencing Mr. Pena stated that he had wanted Mr. Garcia to testify for him but counsel had not called him. Sentencing Transcript, November 9, 2006, Ct. Rec. 246, p. 41. Finally, a shortened version of Mr. Garcia's affidavit was presented at the sentencing hearing. Because the evidence was available before Mr. Pena's trial it is not "newly discovered" nor could the Court find that Mr. Pena exercised due diligence in "uncovering" it now. These facts alone are sufficient to determine that Mr. Pena is not entitled to a new trial.

In addition however, the evidence would have been impeaching and it cannot be said that it would probably have produced an acquittal. At the trial the confidential informant testified that Mr. Pena, known to the informant as George, had previously delivered drugs to the informant from Mr. Garcia. It was beyond dispute that Defendant drove from Pasco to Spokane with Mr. Zazueta and was present when the informant and Mr. Garcia met at a

restaurant, after which the drugs were delivered and Mr. Pena drove away with Mr. Garcia. Mr. Garcia's statement that Mr. Pena was not involved in the drug conspiracy could have been used to impeach the confidential informant, but defense counsel made that argument in closing. He attacked the credibility of the confidential informant (Trial Transcript, Ct. Rec. 241, p. 336) and asserted that there was no evidence that Mr. Pena knew anything about the drugs or the conspiracy. Trial Transcript, Ct. Rec. 241, p. 339. The jury rejected that interpretation of the evidence finding Mr. Pena guilty of all counts. It is highly unlikely that a co-defendant's exculpatory affidavit or testimony would have probably resulted in an acquittal.

**Defense Counsel Ineffective for Failing to Offer Mr. Garcia's Testimony.**

In his reply brief, Mr. Pena raises a new ground for relief arguing that defense counsel was ineffective for failing to secure Mr. Garcia's exculpatory testimony at trial. Mr. Pena cannot argue that defense counsel failed to investigate Mr. Garcia's potential testimony as Mr. Garcia states that defense counsel did meet with him and Mr. Garcia offered to testify in favor or Mr. Pena. The question is: was the failure to offer the testimony below an objective standard of reasonableness? Defense counsel was aware of the testimony and choose not to offer it. That is a strategic decision that this court cannot second guess. The Court can understand however, that a co-Defendant's exculpatory testimony could be viewed as marginally helpful, not likely to be found credible, and may have done more harm than good to the defense strategy. Moreover, Mr. Pena cannot establish prejudice. There is no reasonable probability that had Mr. Garcia testified the outcome of the trial would have been different. The jury could find that the confidential informant was a credible witness and the circumstantial evidence supported the jury's verdicts.

### III. CERTIFICATE OF APPEALABILITY

An appeal of this Order may not be taken unless this Court or a Circuit Justice issues a certificate of appealability, finding that "the applicant has made a substantial showing of

ORDER - 9

the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (West 2008). This requires a showing that "reasonable jurists would find the district Court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a claim is dismissed on procedural grounds the Court must determine whether

> jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack*, 120 S. Ct. at 1604. A certificate of appealability should not be granted unless both components, one directed at the underlying constitutional claims, and the second directed at the court's procedural holding, are satisfied. *Id.* The Court may address either the constitutional or procedural issue first. *Id.* Based on the Court's preceding analysis, the Court concludes: 1) that the Movant has failed to make a substantial showing of a denial of a constitutional right and 2) that jurists of reason would not find it debatable whether the Court was correct in any substantive or procedural ruling. Thus a certificate of appealability should not issue. Accordingly,

**IT IS ORDERED** that Mr. Pena's Motion Under 28 U.S.C. § 2255, filed June 23, 2008, **Ct. Rec. 264**, is **DENIED**.

The District Court Executive is directed to:

- File this Order and provide copies to pro se Movant and to the United States Attorney in Spokane, Washington;
- Inform the Ninth Circuit Court of Appeals that if the Movant files a Notice of Appeal that a certificate of appealability is **DENIED**; and
- **CLOSE** the corresponding civil file, **CV-08-199-WFN**.

**DATED** this 26th day of December, 2008.

s/ Wm. Fremming Nielsen
WM. FREMMING NIELSEN
SENIOR UNITED STATES DISTRICT JUDGE

12-04

ORDER - 10